**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**PITTSBURGH**

| | | |
|---|---|---|
| BRANDON EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | 2:23-CV-01663-MJH |
| | ) | |
| vs. | ) | |
| | ) | |
| SENTRY WELLHEAD, | ) | |
| | ) | |
| | ) | |
| Defendant, | | |

**<u>MEMORANDUM OPINION</u>**

On September 19, 2023, Plaintiff, Brandon Evans, filed suit against Defendant, Sentry Wellhead. (ECF No. 1). Plaintiff alleged five claims. Plaintiff alleged wage and hour claims for failure to pay certain wages under the Fair Labor Standards Act ("FLSA"), PA Minimum Wage Act ("PMWA"), and PA Wage Payment and Collection Law ("WPCL"). Plaintiff also brought a racial discrimination claim under 42 U.S.C. § 1981 and a Breach of Contract Claim. On July 11, 2024, Defendant filed a Motion for Summary Judgment, accompanying brief, and Concise Statement of Material Facts. (ECF Nos. 35-38). On August 26, 2024, Plaintiff filed a Brief in Opposition to Defendant's Motion for Summary Judgment. (ECF No. 43). On September 9, 2024, Defendant filed their Reply. (ECF No. 47). All of the issues have been briefed and are ripe for disposition. For the following reasons, Defendant's Motion for Summary Judgment will be granted in full.

**I.       Statement of Facts**

Plaintiff, Brandon Evans, was employed by Sentry Wellhead ("Sentry"), as a Service Technician, which involved driving company vehicles. (ECF No. 38, at 1). Mr. Evans began his employment on July 20, 2022 and was terminated on July 13, 2023. (*Id.*).

On an unspecified date, Sentry received a call from an individual who reported that a Sentry truck driver was driving recklessly, on his cell phone, and had unsecured items on his trailer. (ECF No. 37-5, at 23-24). Johan Lopez, Sentry's Regional Operations Manager, spoke with the caller and learned the location of the truck. (*Id.* at 24-25). Lopez testified that she investigated GPS records of Sentry vehicles and concluded that Mr. Evans was the driver in the area when the individual called and complained. (*Id.*). Lopez confirmed with Sentry's Shop Manager that Mr. Evans' trailer had loose items on it. (*Id.* at 28). Lopez testified that the GPS records also revealed that Mr. Evans was speeding while driving his truck. (*Id.* at 33). Mr. Evans had previously received a parking ticket for parking in a handicap parking spot. (*Id.* at 29). Sentry avers that they terminated Mr. Evans because of the call, loose items on Mr. Evans' truck, Mr. Evans' speeding, and the previous parking ticket. (ECF No. 46, at ¶¶ 10-16).

Mr. Evans testified that his termination was not based upon reckless driving; instead, he alleges his termination was based upon his race, because other employees, whom Evans believes were similarly situated to him, were involved in accidents with Sentry vehicles but were not terminated. (ECF No. 37-4, at 44-45); (ECF No. 1, at 8). One of these employees was Scotty Coughran, an employee who was involved in an accident with a Sentry vehicle. (ECF No. 37-4, at 44-45). Another was Travis Hopkins, who was involved in a multi-car accident, when the car in front of him abruptly came to a stop, and in an attempt to avoid the car, Hopkins drove a Sentry truck into a ditch. (ECF No. 37-3, at 40-41). Lowell Sams was driving in a mountainous area in a snowstorm, when he lost control of his vehicle and ran into a plow truck. (ECF No. 37-

2

3, at 39). Coughran and Hopkins are white, and Sams is black. (*Id.* at 41). None of these employees were terminated by Sentry.

Mr. Evans also alleges that Sentry failed to pay him wages for off-the-clock work that he performed outside of his normally scheduled work hours. (ECF No. 43, at 2). This includes work assignments that he was asked to perform by management, on-call time wherein he had to immediately respond to texts or calls from management on a 24/7 basis, and travel time to and from work and jobs. (*Id.*).

## II.    Relevant Legal Standards

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an effect upon the outcome of the suit. *Id.* In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion.  Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 256-57 (internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

## III.    Discussion

### A.  Counts I & II: FLSA and PMWA claims

Mr. Evans brings claims under the FLSA and PMWA for failure to pay overtime wages. (ECF No. 1, at ¶¶ 42-46, 52-56, 59-72). Sentry argues that Mr. Evans has not provided any record evidence that Sentry failed to pay overtime wages. (ECF No. 36, at 16). Sentry further argues that Mr. Evans admitted that he was only asserting a claim for travel time. (*Id.*). Mr. Evans argues that Sentry failed to pay him for time spent "waiting to be assigned to jobs" and for "all time travelled on company business." (ECF No. 1, at ¶¶ 30, 31).

Under the FLSA, employers are required "to pay their employees at least a specified minimum hourly wage for work performed ... and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003) (citing 29 U.S.C. §§ 206, 207). The PMWA

provides that "[e]very employer shall pay to each of his or her employees wages for all hours worked at a rate of not less than ... the minimum wage set forth in the Fair Labor Standards Act of 1938," 43 Pa. Stat. and Cons. Stat. Ann. § 333.104(a.1). The PMWA further states that employees shall receive overtime wages of "not less than one and one-half times" their regular wage for any hours worked over 40 hours in a workweek. 43 Pa. Stat. and Cons. Stat. Ann. § 333.104(c). Pennsylvania courts analyze minimum wage and overtime violations of the PMWA and FLSA under the same framework. *Bansept v. G & M Automotive*, 434 F. Supp.3d 253, 258 (E.D. Pa. 2020).

<u>On-Call Time</u>

In his Response in Opposition, Mr. Evans argues that the unpaid wages related to on-call time include the following:

> "Both [] the 24/7 on-call time (time outside his normally scheduled work time) where he was performing tasks at the direction of management, as well as for the 24/7 on-call time where he was unable to engage in uninterrupted personal activities in order to respond immediately to calls or texts from management directing him to report immediately to either the Sentry facility or a job site."

(ECF No. 43, at 13).

"An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call." 29 CFR § 785.17. "Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked." 29 CFR § 785.16. "[T]he test is not whether the employee has substantially the same flexibility or freedom as he would if not on call, else all or almost all

on-call time would be working time, a proposition that settled case law and the administrative guidelines clearly reject." *Ingram v. County of Bucks*, 144 F.3d 265, 269 (3d Cir. 1998) (internal quotes omitted). The United States Supreme Court held that "whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).

Four factors are considered, regarding whether time is spent for the employer or the employee's benefit: (1) whether the employee may leave home; (2) the frequency of calls and the nature of the employer's demands; (3) the employee's ability to maintain a flexible on-call schedule and switch on-call shifts; and (4) whether the employee actually engaged in personal activities during on-call time. *Ingram v. County of Bucks*, 144 F.3d 265, 268 (3d Cir. 1998); *see also Bansept v. G&M Auto.*, 557 F. Supp. 3d 584, 590 (E.D. Pa. 2021) (relying on Ingram to determine whether the on-call time was compensable). "If these factors reveal onerous on-call policies and significant interference with the employee's personal life, Courts have held that on-call time is compensable." *Id*.

The Court will first address whether Mr. Evans can establish that a genuine issue of material fact exists that the 24/7 on-call time during which Mr. Evans was waiting to be called in to work and was "unable to engage in uninterrupted personal activities" was compensable. Mr. Evans states, in his Affidavit, that there were at least 4 hours every day of the week that he was prevented from engaging in personal activities, including being with his children. (ECF No. 45-5). Sentry argues that Mr. Evans had "great personal latitude" while on-call and waiting to be called in to work. (ECF No. 36, at 18). On at least one occasion, Mr. Evans refused to come into work when called in by his supervisor. (ECF No. 46, at 27). Mr. Evans testimony shows that on several occasions, he refused to respond to calls because he was with his children. (ECF No. 37-

6

4, at 60, 73, 124, 125). Additionally, Mr. Evans testified that "they were allowed to do whatever they chose to do so long as they were available to answer a call to go to the next job." (ECF No. 46, at ¶ 34). Mr. Evans admits that on some occasions, when he finished a job early in the day but was still being paid, he would go to the Meadows Casino or shopping at Tanger Outlets. (*Id.* ¶ 41). The record evidence supports that while Mr. Evans was on-call and waiting to be called in, he was able to engage in personal affairs such as spending time with his children, going to the casino, and going shopping. Such personal activities are the type that preclude compensability under the FLSA and PMWA. Thus, Mr. Evans has failed to establish a genuine issue of material fact that the on-call time he spent waiting to be called in is compensable under the FLSA and PMWA.

Next, the Court will address the on-call time wherein Mr. Evans alleges that he was asked to perform specific tasks. Mr. Evans testified that, over the course of his employment at Sentry, there were at least ten times where, directed by management, he performed deliveries (known as "hot-shots"), outside his normally scheduled work time, and was not paid for his efforts. (ECF No. 37-4, at 87-88). Mr. Evans further testified that there were no work records, such as time slips, generated from these times that he worked. (*Id.*). In their Reply Brief, Sentry argues that Mr. Evans has not put forth any record evidence showing that he was not compensated for these alleged deliveries that he performed. (ECF No. 47, at 7-8).

Mr. Evans testified that when he conducted these deliveries, his boss, "which was Nathan or Danny, would give [Mr. Evans] the hours. They would just tell [him] to put six or four hours down . . ." (ECF No. 37-4, at 88). Nathan Simmers, Mr. Evans' supervisor, testified that when employees would perform these "hot-shots" they would bill the time to the client or as shop time. (ECF No. 37-3, at 14-16). Mr. Evans further testified that "I record everything from what I do,

who I'm with, what I'm doing[,] to the color underwear I got on. I just record everything. It's details." (ECF No. 37-4, at 156). While Mr. Evans alleges that he was not paid for these ten deliveries, he cannot point to any record evidence, other than his own testimony, to support his assertions. Mr. Evans' testimony that he records everything in detail contradicts his allegations that he was unpaid for the ten deliveries. As such, Mr. Evans fails to establish that a genuine issue of material fact exists that he was not paid for the on-call time where he had to make specific deliveries for Sentry.

<u>Travel Time</u>

Mr. Evans also alleges that he was not paid for "all time traveled on company business." (ECF No. 1, at 30). "An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites." 29 CFR § 785.35. Such normal travel from home to work is not considered "worktime." *Id.*

Mr. Evans admits that he lived close to Sentry and to many of the job sites to which he commuted. (ECF No. 46, at ¶ 25). Mr. Evans testified that his commute time from his house to Sentry and many of the work sites was fifteen to thirty minutes. (ECF No. 37-4, at 29, 35, 74). Mr. Evans testified that he was paid for the actual time that it took to travel to work sites from his home. Mr. Evans stated, "I was still getting paid to let the truck warm up on a cold morning." (*Id.* at 143). Mr. Evans' travel time to worksites and Sentry, which were mostly a fifteen to thirty minute commute, is ordinary work to home travel which is a normal incident of employment. Mr. Evans is not entitled to any sort of compensation for such travel under the FLSA and PMWA, yet he was paid for such according to his testimony. Thus, Mr. Evans fails to establish

that a genuine issue of material fact exists that he was not paid for "all time traveled on company business."

Sentry's Motion for Summary Judgment, as to the FLSA and PMWA claims against Sentry, at Counts I and II of the Complaint, will be granted.

## B. Count III: Breach of Contract Claims

Mr. Evans brings breach of contract and WPCL claims against Sentry, alleging that Sentry failed to pay Mr. Evans for "all time traveled on company business" and "all time worked at a regular rate of pay or to pay him overtime pay at the promised rate of 1 ½ the regular rate of pay." (ECF No 1, at ¶¶ 30, 60). Mr. Evans further alleges that Sentry promised to pay him for extra travel time of up to four hours per day. (ECF No. 43, at 17-18). Sentry argues that Mr. Evans fails to set forth any record evidence showing times in which he worked or traveled and was not compensated. (ECF No. 36, at 19). Sentry further argues that Mr. Evans fails to establish that Sentry promised to pay Mr. Evans for travel time in excess of the time he actually spent traveling to work and job sites. (*Id.*).

"The party relying on an alleged oral contract . . . has the burden of proving its existence." *Ensor v. Clearfield Prof'l Grp., Ltd.*, 2023 WL 5515976, at *10 (W.D. Pa. 2023) (analyzing an oral contract in an employee-employer wage dispute) (citing *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 486 (E.D. Pa. 2018)). To establish the existence of an oral agreement "one must show that: (1) both parties have manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement are sufficiently definite to be specifically enforced; and, (3) there is mutuality of consideration." *Id.* "For a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material

and necessary details of their bargain." *Id.* (citing *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006)). In determining the existence of an oral contract, the threshold inquiry is whether the parties manifested mutual intent to be bound by the terms. *Id.* at 10-11. When determining intent, the relevant question is what a reasonable person would understand in analyzing the parties' behaviors. *Am. Eagle Outfitters v. Lyle & Scott Ltd.,* 584 F.3d 575, 582 (3d Cir. 2009).

As to Mr. Evans allegations that he was not paid for all the time that he spent traveling or working for Sentry, Mr. Evans has not pointed to any record evidence showing any time where he worked or traveled and was not compensated. Mr. Evans testified that he documented everything on his timesheets, including "the color of his underwear." (ECF No. 37-4, at 156). When Sentry asked Mr. Evans to provide specific times when he worked and was uncompensated, Mr. Evans responded that he was "not even sure." (ECF No. 43, at ¶ 28). When asked if there were any other times, other than travel times, that Mr. Evans was not paid for, he responded "no." (*Id.* at ¶ 29). For these reasons, and those discussed above, regarding Mr. Evans FLSA and PMWA claims, Mr. Evans fails to establish that a genuine issue of material fact exists regarding Mr. Evans' claim that Sentry breached any contract for not paying him for the time he spent travelling or working for Sentry.

As to Mr. Evans' allegation that Sentry promised to pay him for additional travel time, in excess of the time he spent commuting to work, Mr. Evans fails to establish a genuine issue of material fact that any oral promise, to pay him for additional travel time, was ever created. In support of his claim that Sentry made an oral promise to pay Mr. Evans for additional travel time, Mr. Evans testified as follows:

10

> "Nathan had sent out a text message telling us that we're to put two hours' travel to and from. I had -- I had already been cheating myself, I'm guessing, but the company was going back, refixing those tickets to charge back to the vendor that we were working through to get their money because I shorted the company money just as well as myself. But the company regained their money, I didn't get -- gain back for the money that they went and took from the other company."

(ECF No. 37-4, at 73-74). However, Mr. Evans' written employment offer does not mention that he would be paid for such additional time. (ECF No. 37-2). Further, as to the issue of any enforceable oral contract, Mr. Evans does not provide any other record evidence to support that the necessary elements to create any contract were established. Nathan Summers testified that Sentry's travel time varies, based on the customer and type of job performed. (ECF No. 43, at ¶ 39). Mr. Simmers further testified that Sentry has an agreement with some of its clients for Sentry to be paid travel time for two hours to and from the worksite. (*Id.* ¶ 40). Mr. Simmers did not testify that Sentry employees were paid for this extra two hours that Sentry billed to its clients.

Mr. Evans has produced no record evidence of any mutual manifestation of intent between himself and Sentry to create an oral contract that Mr. Evans would be paid for any hours over and above the hours that he actually traveled. Next, Mr. Evans provides no record evidence of any terms that are sufficiently definitive enough to be enforced. Finally, Mr. Evans has presented no evidence to prove any consideration for any such oral contract. Mr. Evans fails to establish a genuine issue of material fact as to any of the three elements necessary to prove the existence of any contract. Thus, Mr. Evans' claim that Sentry breached any alleged oral agreement to pay him for travel expenses in excess of the actual time it took Mr. Evans to travel to work sites fails.

Sentry's Motion for Summary Judgment, as to Mr. Evans' Count III breach of contract claims, will be granted.

### C. Count IV: WPCL Claims

Mr. Evans brings claims against Sentry under the WPCL, alleging that Sentry failed to pay him the contracted wages for all the time that he worked and traveled on behalf of Sentry. (ECF No. 1, at 7).

"The Wage Payment and Collection Law provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." The WPCL "'does not create a right to compensation .... [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned.'" *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) (citing *Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir. 1996)). Where an employee does not work under a written employment contract or collective bargaining agreement, the employee must establish the formation of an oral contract to recover under the WPCL. *Id.* at 309-10.

For the reasons discussed above, Mr. Evans fails to establish a genuine issue of material fact that there was any contract that required Sentry to pay him for any wages above the wages that he was paid by Sentry. Additionally, he fails to establish any oral contract existed to pay him for hours that he did not actually perform work or travel for Sentry. Mr. Evans has not established any contract or breach for which remedies, pursuant to the WPCL, would attach. As such, Mr. Evans' WPCL claims fail.

Sentry's Motion for Summary Judgment, as to Mr. Evans' Count IV WPCL claims, will be granted.

**D. Count V: § 1981 Claim**

Mr. Evans alleges that Sentry terminated him because of his race, in violation of 29 U.S.C. § 1981. Sentry argues that Mr. Evans' fails to establish a prima facie case for a § 1981 racial discrimination claim. (ECF No. 36, at 10). Sentry further argues that it has presented a legitimate, nondiscriminatory reason for its actions, and Mr. Evans cannot point to any record evidence that establishes any genuine issue of material fact to show that such reasons are pretextual. (*Id.*). Mr. Evans argues that he established a prima facie case for a § 1981 race discrimination claim related to his termination.[1] (ECF No. 43, at 6). Mr. Evans' further argues that Sentry's legitimate, nondiscriminatory reasons for its actions were pretextual. (*Id.* at 10-11).

As the U.S. Supreme Court has ruled, for a Section 1981 claim, Plaintiff bears the burden of showing that the plaintiff's race was a but-for cause of his injury, and that, but for his race, he would not have suffered the loss of a legally protected right. *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020). It is not enough to show that "race played 'some role' in the defendant's decision-making process." *Id.* at 1013 (internal citation omitted). Under §1981, the race-based discrimination must have been the "determinative reason" for the adverse action. *Arevalo-Carrasco v. Middleby Corp., Inc.*, 851 F. App'x 628,

---

[1]In his Brief in Opposition, Mr. Evans alleges that he is able to establish a "prima facie race discrimination claim for the failure to promote him, or give him promotional opportunities, as compared to his white counterparts while employed by Defendant." (ECF No. 43, at 7). However, Mr. Evans failed to plead any facts in his complaint to allege a race discrimination claim for failure to promote. Mr. Evans cannot raise a new claim in his brief that was not pled in his complaint. A "plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgement" and summary judgment is appropriate when such claims are not asserted in the complaint. *Bell v. City of Philadelphia*, 275 Fed. Appx. 157, 159 (3d Cir. 2008). Thus, the Court will not address Mr. Evans' failure to promote claim.

630-31 (7th Cir. 2021) (citing *Comcast*, 140 S. Ct. at 1019). In their briefs, Mr. Evans and Sentry

apply the *McDonnell Douglas* factors to this claim. The Court will analyze this claim under the

proposed framework.

Under this framework, Mr. Evans first must establish a prima facie case of discrimination.

The burden then shifts to Sentry to articulate a legitimate, nondiscriminatory reason for its

actions. *Robinson v. Giant Eagle*, 2024 WL 74737, at *2 (3d Cir. 2024) (quoting *McDonnell*

*Douglas Corp v. Green*, 411 U.S. 792, 802 (1973)). Once done, the burden shifts back to Evans

to prove by a preponderance of the evidence that the legitimate reasons articulated by Sentry are

a pretext for discrimination. *Id.*

i.    Prima Facie Case

To establish a prima facie case for race discrimination, a plaintiff must show that "(1) he

belongs to a racial minority, (2) he was qualified for the position he lost, (3) he was discharged,

and (4) colleagues who were not part of the protected class were treated more favorably. *Josey v.*

*John R. Hollingsworth Corp.*, 996 F.2d 632, 637-38 (3d Cir. 1993).  Comparators must be

similar "in relevant respects" to the plaintiff asserting racial discrimination. *Ellis v. Bank of New*

*York Mellon Corp.* 2020 WL 2557902 *11 (W.D. Pa. 2020). This includes "showing that the two

employees dealt with the same supervisor, were subject to the same standards, and had engaged

in similar conduct without such differentiating or mitigating circumstances as would distinguish

their conduct or the employer's treatment of them." *Opsatnik v. Norfolk Southern Corp.*, 335 F.

App'x 220, 223 (3d Cir. 2009) (internal citation omitted).

Sentry argues that Mr. Evans cannot establish the fourth prong of a prima facie case for race

discrimination, because Mr. Evans fails to provide any record evidence that he was treated

14

differently from members of a different class because of his race. (ECF No. 36, at 11). Mr.

Evans argues he has established a genuine issue of material fact, because Sentry treated three

other white employees differently than himself. (ECF No. 43, at 9-10).

The first employee, Scotty Coughran, was a Sentry employee who was involved in an

accident that resulted in a Sentry vehicle being totaled. (ECF No. 46, at ¶ 18). Sentry investigated

the incident and concluded that the accident resulted after Coughran had a "sneeze attack." (ECF

No. 37-4, at 38); (ECF No. 37-3, at 38-39); (ECF No. 37-5, at 30). Coughran was drug tested and

his GPS was checked. (ECF No. 46, at ¶ 21). Coughran was not disciplined or terminated. The

second employee, Travis Hopkins, was a Sentry employee who was involved in a multi-car

incident when a car abruptly stopped in front of him, and he attempted to swerve out of the way.

(ECF No. 37-3, at 40-41). Hopkins was also not disciplined or terminated. The third employee

was an individual, who Mr. Evans refers to as Marvin. Mr. Evans testified that Marvin was jailed

after he threatened his wife with a knife. (ECF No. 37-4, at 53-55, 108). Mr. Evans further

testified that Sentry paid Marvin's bail and that he was not disciplined or terminated. (*Id.*).

The record evidence, concerning these three employees, does not support that Mr. Evans'

alleged comparators were similarly situated to him. Johan Lopez testified that Mr. Evans was

terminated, because Sentry received a call that Mr. Evans was driving recklessly, he did not have

items properly secured to his truck, he had received a prior parking ticket, and, according to his

GPS tracking, he was also speeding. None of the white comparators that Mr. Evans points to

were involved in similar circumstances to those of Mr. Evans. Additionally, Lowell Sams, a

black Sentry employee, was also involved in an accident and he was not terminated. Further, Mr.

Evans does not point to any other record evidence to establish that he was terminated because of

his race. Thus, Mr. Evans' does not establish the fourth prong of a prima facie race discrimination case.

<u>Legitimate Nondiscriminatory Reason</u>

Even if Mr. Evans had established a prima facie case for race discrimination, which we do not find, Sentry has produced legitimate, nondiscriminatory reasons for its actions. Sentry alleges that they terminated Mr. Evans' employment because an individual called in a complaint about Mr. Evans driving recklessly while he had unsecure items on his trailer. Johan Lopez testified that, upon investigating said complaint, she confirmed Mr. Evans' location at the time of the complaint through GPS records. Ms. Lopez further testified that GPS records showed that Mr. Evans was speeding. Further, a site manager confirmed that the items on the trailer had not been secured. Finally, Mr. Evans previously received a ticket for parking his work vehicle in a handicap parking spot. Mr. Evans does not provide any record evidence to refute Sentry's proposed legitimate nondiscriminatory reasons for its actions. Mr. Evans testified that he was told that he was terminated for being "impaired," but the record evidence suggests that he was terminated for the reasons proffered by Sentry. In his Brief in Opposition, Mr. Evans indicates that he had made a complaint in the past to Mr. Simmers about race discrimination; however, such a complaint does not in any way refute Sentry's proffered legitimate nondiscriminatory reasons for terminating Mr. Evans. As such, Mr. Evans has failed to establish any genuine issue of material fact exits that Sentry's legitimate nondiscriminatory reasons for terminating Mr. Evans were pretextual.

Sentry's Motion for Summary Judgment, as to the Mr. Evans' Count V § 1981 claims, will be granted.

## IV.    Conclusion

For the reasons above, Defendant's Motion for Summary Judgment will be granted in full. Judgment will be entered in favor of Defendant and against Plaintiff as to all claims and Counts within the Complaint. A separate Order to follow.

DATE: 1/29/2025

Marilyn J. Horan
United States District Judge